IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTON |
| | : | |
| v. | : | |
| | : | NO. 06-203-all |
| EDWARD STEARN, | : | |
| JOSEPH DOEBLEY, and | : | |
| MICHAEL DOEBLEY | : | |

**MEMORANDUM AND ORDER**

**Juan R. Sánchez, J.**                                                               **June 26, 2008**

The Government asks me to reconsider my Order suppressing evidence seized from five residences, arguing the good faith exception applies. The affidavit presented to the magistrate in support of the warrant was so lacking in indicia of probable cause that the officer could not have reasonably believed it satisfied the Fourth Amendment. For that reason, I will re-affirm my earlier Order granting in part the Defendants' Motions to Suppress.

**FACTS**[1]

This Court granted the Defendants' suppression motions in part, suppressing evidence seized from residences on Higbee and Homestead streets, but denying suppression with regard to evidence seized from 4808 Comly Street, a garage converted to a gymnasium, and from Joseph Doebley's blue and white Chevy truck and rust-colored Impala. I found there was no probable cause within the four corners of the affidavit to search the residences on Homestead and Higbee streets. Because two drug sales, one by an unnamed white male and one by Joseph Doebley, were made when the sellers

---

[1] The entire affidavit for the first series of warrants is attached as Appendix A.

left from and returned to the garage/gym, I found probable cause to believe evidence of drug dealing would be found in the garage/gym and in the vehicles from which the sales were made. I rejected the Government's argument in favor of an inference that a drug dealer keeps his supply at home as not reasonable in this case. The more reasonable inference was that Joseph Doebley kept his supply of illegal drugs stashed not at home but at the garage/gym, from which both documented sales were made.

I specifically rejected any inference of credibility which might have attached to the confidential informant to whom the affidavit attributed the information the Defendants were drug dealers because the affidavit failed to assert the informant's reliability, the results of any past information from the informant, or the source of the informant's information. In the first paragraph of the affidavit the confidential informant is referred to as "the C/I." The second paragraph of the affidavit recites that **"a** C/I" made a drug buy from Joseph Doebley. (Emphasis added). Nothing in the affidavit identifies the confidential informant from the first paragraph as the same one in the second paragraph. The use of "the" in the first instance followed by "a" in the second instance suggests two separate people. The Government says the use of the abbreviation "C/I" implies they are a single person. I disagree. The affidavit uses the abbreviation "W/M" half a dozen times to refer to different while males. I find no reason to conclude "the confidential informant" in paragraph one is the same person as "a confidential informant" in paragraph two.

The surveillance of the houses on October 4, 2005 showed Joseph Doebley went from the garage/gym to the Wawa, then to 5038 Homestead St., a house owned by Ruth Nolan. Doebley stayed until 11:30 p.m. and went back to the garage/gym at 4808 Comly to lock the gate. Doebley went back to the 5000 block of Homestead, entered and left a house and went to the 4000 block of

Higbee, parked in the rear of 4049 Higbee, and went inside. Doebley's truck remained parked behind 4049 Higbee at least until 7:15 a.m. the next morning. The affidavit points to no evidence of contraband being carried or concealed on the trips to the houses.

During the afternoon of October 5, 2005, police recorded the unremarkable movements of the Doebleys and two unidentified men over the next three and a half hours. Police surveillance saw Michael Doebley leaving 5019 Homestead with another man in a grey Jeep Cherokee. They went to the garage/gym, picked up Joseph Doebley, and returned to 5019 Homestead. Joseph Doebley left 5019 Homestead and went across the street to 5022 Homestead. Another white man, who arrived in a black Ford Expedition, entered 5022 Homestead. The driver of the Ford and Joseph Doelbey left 5022 Homestead and went to the gym where Joseph Doebley picked up his blue and while Chevy truck and returned to Homestead street, entering 5019, perhaps 5017, and then using a key to enter 5022 and 5028 Homestead. Joseph Doebley spent an hour in 5030 Homestead with a woman, after which he returned to 5022 Homestead and stayed there at least until 8:15 p.m. The affidavit does not record anything to suggest evidence of criminal activity would be found in any of the residences. I found no probable cause to search the residences on Homestead and Higbee Streets because nothing documented by the police surveillance lead to an inference evidence of criminal activity would have been found in those places.

The Government argues the investigating officers – including the officer who attested to the facts in the affidavit – were entitled in good faith to rely on the warrants issued and the evidence should not be suppressed.

**DISCUSSION**

A court may reconsider an order if there has been an intervening change in the controlling

law, new evidence becomes available, there is a need to correct a clear error of law or fact, or to prevent manifest injustice. *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). The Government argues this Court erred in fact and law when it granted in part Defendants' Motions to Suppress for lack of probable cause. The Government contends the evidence recovered should not have been suppressed because the officers searching were entitled to rely in good faith on the warrant signed by an independent magistrate. The Government argues the totality of the circumstances from *Illinois v. Gates*, 462 U.S. 213 (1983), and the good faith doctrine from *Leon* require that this Court affirm the validity of the warrants. *United States v. Leon*, 468 U.S. 897 (1984).

A valid warrant requires a "substantial basis for ... conclud[ing] that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Gates*, 462 U.S. at 236 (citations omitted). The central question is whether the affidavit provided "a fair probability that . . . evidence of a crime will be found" in the residences on Homestead and Higbee streets. *Gates*, 462 U.S. at 238. The Third Circuit has held, "probable cause to arrest does not automatically provide probable cause to search the arrestee's home." *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993). The distinction turns on the fact that "search warrants are directed, not at persons, but at property where there is probable cause to believe that instrumentalities or evidence of crime will be found." *United States v. Whitner*, 219 F.3d 289, 297 (3d Cir. 2000).

When an anonymous tip gives an "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand," it is entitled to "greater weight than might otherwise be the case." *Id.* at 234. The Supreme Court in *Gates* found the totality of the circumstances protected a warrant based on an anonymous letter because the details in the letter,

"predictions that the Gates' car would be in Florida, that Lance Gates would fly to Florida in the next day or so, and that he would drive the car north toward Bloomingdale all indicated, albeit not with certainty, that the informant's other assertions also were true." *Gates*, 462 U.S. at 244.

The Government argues the reliability of the confidential informant in this case rests on the corroboration of his statements within the affidavit. I did not find corroboration within the four corners of the affidavit, because I did not find reasonable the inference the two informants are the same. No source or reason for knowing is attributed to the first confidential informant, whose allegations describe Joseph and Michael Doebley as drug dealers supplied by Edward Stearn. Without some indicia of reliability, an inference of truth is unreasonable. *Gates*, 462 U.S. at 234. The Government's argument the confidential informant referred to in the second paragraph as "a C/I" is the same confidential informant as that referenced as "the C/I" in the first paragraph is also an unreasonable inference. The abbreviation C/I for someone a police officer does not want to name is as common as the abbreviation W/M, also used throughout the affidavit to refer to different "white males." Nothing in the affidavit allows a reasonable inference the small amount of cocaine purchased from Joseph Doebley in the second paragraph corroborates the idea Edward Stearn was his supplier.

The Government itemizes five details, allegedly from the anonymous confidential informant, corroborated by surveillance: the color of the car and the truck Joseph Doebley drove, the ownership of the garage/gym, the location of Doebley's home, the fact the brothers drove together from the garage/gym, and Stearn's drug history. In *Gates*, the corroborated details werre those only an insider could have known, where the drugs were procured, who drove the car back to Illinois, and where the drugs were stored. *Gates*, 462 U.S. at 244. Here, the details allegedly provided by a confidential

informant were those readily available to a casual observer.

The Third Circuit has distinguished a sufficient affidavit with detailed, first-hand observations from an affidavit lacking probable cause "contain[ing] mere conclusory assertions or a single piece of evidence which the law of the stationhouse shop would recognize as clearly insufficient." *United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993) (holding a sufficient affidavit makes clear who the confidential informant is, contains extensive details, and explains how the informant obtained her information). I find the information in the affidavit in this case lacked the first-hand observations necessary to give it sufficient weight to create probable cause under the totality of the circumstances..

Turning to the question of good faith, the Government's second argument, under *Leon*, is that suppression of evidence "is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority." *Williams*, 3 F.3d at 74. The Third Circuit has identified four narrow situations where "an officer's reliance on a warrant would not be reasonable and would not trigger the [good faith] exception." *Hodge*, 246 F.3d at 309. They are a "deliberately or recklessly false affidavit," a magistrate who abandons his role, "an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or a facially deficient warrant. *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents ($92,422.57)*, 307 F.3d 137, 145-46 (3d Cir. 2002). When a police officer has "not presented a colorable showing [of probable cause], and the warrant and affidavit on their face preclude reasonable reliance, the reasoning of *Leon* does not apply." *United States v. Zimmerman*, 277 F.3d 426, 437 (3d Cir. 2002) (quoting *United States v. Hove*, 848 F.2d 137, 140 (9th Cir.1988)).

When the Supreme Court announced the good faith exception in *Leon*, "it weakened the

exclusionary rule, but it did not eviscerate it." *Zimmerman*, 277 F.3d at 438. The Third Circuit emphasized in *Zimmerman* "it is somewhat disingenuous, after having gone to the magistrate with the paltry showing . . . to suggest . . . it was the magistrate who made the error and the search and seizure are insulated because the officer's reliance on that error was objectively reasonable." *Id*. at 438. Here the affidavit was just such a "bare bones document" on which the officer could not reasonably rely. *United States v. Loy*, 191 F.3d 360, 369 (3d Cir. 1999). The affidavit lacked any indicia of probable cause evidence of wrong-doing would be found in the residences; the magistrate's reliance on it was unreasonable.[2]

To justify the searches of the residences on Higbee and Homestead Streets, the Government raises the inference drug dealers hide evidence of their crimes at home. *United States v. Burton*, 288 F.3d 91, 104 (3d Cir. 2002). The *Burton* holding evidence of a crime is likely to be found in the wrong-doer's home, *Burton*, 288 F.3d at 104, is derived from *Jones* in which the defendants stole a large quantity of cash from an armored car relatively near their homes, "making all of their homes a likely repository for evidence." *Jones*, 994 F.2d at 1057; *see also United States v. Hodge*, 246 F.3d 301, 306 (3d Cir. 2001) (holding "[i]t is reasonable to infer that a person involved in drug dealing on such a scale would store evidence of that dealing at his home."); *Whitner*, 219 F.3d at 298 (holding "a dealer logically could conclude that his residence is the best, and probably the only, location to store items"). In none of the cited cases is there any suggestion any of the defendants had any other place in which to hide their contraband. In this case, the defendants had the gragage/gym

---

[2]The Government also seeks in its brief for reconsideration to argue standing as to each of the Defendants. At oral argument, the Government conceded the standing issue was subservient to the issue of probable cause. Because I find the searches were unreasonable, the evidence will be suppressed as to each of the three Defendants.

7

in which to store their contraband. Both recited drug deals began at the garage/gym and nothing in the movements of the defendants give rise to an inference they stored their contraband in the houses on Higbee and Homestead streets.

The Government suggests seeing Joseph Doebley at 4049 Higbee Street on the same day he received money from a drug seller is sufficient to warrant searching 4049 Higbee. This argument is unpersuasive. Instead, the search of the gym/garage at 4808 Comly street is more reasonable because Doebley entered the gym/garage after receiving money from the drug seller. Following the *Burton* rationale, drug dealers are likely to hide their contraband in the closest private place. A reasonable inference is the gym/garage is a more likely hiding place than the residences because the two instances of drug dealing detailed in the affidavit began at the garage/gym on Comly Street. Nothing in the affidavit establishes probable cause to justify the invasive searches of residences with no nexus to the crimes alleged. A search of a home with no recited nexus to the crimes alleged offends the Fourth Amendment.

In sum, I reaffirm my finding that relying on a confidential informant's bare bones information, without more, is insufficient to search residences frequented by suspected drug dealers when those dealers have a much more accessible and reasonable place to hide their contraband. The affidavit was so lacking in probable cause that the officers could not have in good faith relied on its legitimacy.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTON |
| | : | |
| v. | : | |
| | : | |
| EDWARD STEARN, | : | |
| JOSEPH DOEBLEY, and | : | |
| MICHAEL DOEBLEY | : | NO. 06-203-all |

**ORDER**

And now this 26th day of June, 2008, the Government's Motions for Reconsideration (Document 99) is GRANTED and this Court's Order of April 24, 2008 is REAFFIRMED. The evidence seized pursuant to the following warrants is SUPPRESSED as to each of the Defendants:

1. Search warrant 119893 (4049 Higbee Street);

2. Search warrant 119894 (5022 Homestead Street);

3. Search warrant 119896 (5019 Homestead Street);

4. Search warrant 119897 (5038 Homestead Street);

5. Search warrant 119898 (5020 Homestead Street);

6. Search warrant 119899 (5034 Homestead Street); and,

7. Search warrant 121405 (blood and/or saliva from Edward Stearn).

Evidence seized pursuant to the following warrants is ADMISSIBLE:

1. Search warrant 119892 (4808 Comly Street);

2. Search warrant 120209 (Blue Chevrolet Truck, PA tag YRF2313, VIN 1GCDC14H3KE104762); and,

3. Search warrant 120210 (burgundy Chevrolet, PA tag FTH9167, VIN 1G1EL52P5TR177014)

Joseph Doebley's Motion for Discovery of Confidential Informant and Motion for Additional

Discovery (Documents 88 and 89) are DENIED as moot without prejudice to their reassertion.

BY THE COURT:

                                        \s\ Juan R. Sánchez
                                        Juan R. Sánchez                     J.

**APPENDIX**

The affidavit states (typographical errors in the original):

On 9-28-05 P/O Ryan #E6329 received information from a confidential informant (hereafter referred to as the C/I that Joseph Doebley operates a blue and white pick up truck with fancy rims and a rust color Chevy Impala.  The C/I states that Doebley sells cocaine powder in weight (meaning fraction of ounces and multiple ounces).  Joe Doebley is also in the cocaine business with his brother MICHAEL Doebley.  The C/I stated further that Doebley owns a garage he converted into a gym on 4800 Comly and operates his cocaine business from there and from his house on 4000 Higbee St.  The C/I did not know which house on Higbee.  The C/I states that Doebley's supplier is Ed Stern who lives on 4400 Bleigh and 5000 Homestead.  Joseph Doebley [deleted] Michel Doebley and Ed Stern were all ID on 9-28-05.  The Gym was ID as 4808 Comply.  A blue and white pick up truck with fancy rims was parked alongside of the Gym in the side yard.  4808 Comly's listed owner is Joseph Doebley.  4049 Higbee St's listed owner is Jane Betty Doebley.

At 5:30 pm P/O Vega observed Joseph Doebley exit 4808 Comly and leave the parking lot inside of a Rust colored Chevy Impala PA: FTH-9176 (registered to Joseph Doebley, 259 upper Holland Rd, Richboro PA).  The Impala was lost on Torresdale Ave in traffic.  A C/I was searched on 9-28-05 for narcotics, USC and paraphernalia with negative results by P/O Nicolette #4620.  At 6:35pm the C/I called 215-397-7695 and spoke to a male voice on the other line.  The voice said he would call back.  A phone call was received from 267-258-2787 and the C/I asked for an eight.  The C/I was told to meet at Higbee and Cottage in ten minutes.  P/O Nicolette #4620 and the C/I went to Higbee and Cottage and P/O Nicoldetti #4620 provided the C/I with $150.00 pre-recorded USC.  Doebley arrive operating the Chevy Impala.  The C/I entered the passenger side and P/O Nicolette #4620 observed the C/I hand the USC to DOebley.  Doebley then delivered to the C/I one tied off plastic baggie containing a white powdery substance alleged cocaine powder (approx. 3.5 grams).  The C/I then exited the vehicle and turned over the tied off plastic baggie to P/O Nicolette #4620.  The C/I was searched a second time with negative results.  These narcotics were later placed on PR#2609891.

After the transaction Doebley was followed to Mascher and Lipponcott in the 25th district at 7:55pm. P/O Ryan observed Doebley parked on the corner and met with a H/M on the corner.  The H/M spoke on a cell phone and Doebley was observed returning to his car and then entering a residence on the 100 block of west Lipponcott.  Doebley left the area and was followed to a Cemetery on 4200 Front St at 8:25pm.  Doebley met with a white Jeep Grand Cherokee and exchanged something with the W/M operator of that vehicle.  The Jeep was lost in the area North on Front (PA tag not ascertained).  Doebley was followed to North bound Rt 1 and lost in traffic at approx. 8:40pm in the area of Large.  Checks of 4000 Higbee and 4808 Comly were negative.

On 10-04-05 a surveillance was set up on 4808 Comly at 5:00pm.  P/O Vega #2780 observed Doebley in the side yard of 4808 Comly along with several other W/M's working on a car.  the blue/white chevy pickup (observed in the side yard on 9-28-05) was parked in front PA tag: YRF-2313.  Doebley and the W/m's were in and out of 4808 Comly and the detached garage at the rear.  A W/M (approx. 25 years old, approx. 5'10" 180 lbs close cropped brown hair) exited 4808 Comly.  This W/M spoke with DOebley and entered a maroon Olds parked on the street.  The W/M drove

to Cheltenham and Hegerman. A W/M ID as Lawrence Zawierucha entered the maroon Olds with the W/M. P/O Nicolette #4620 walked by and observed the W/M deliver a clear baggie of cocaine powder to Zawierucha. This W/M then drove Zawierucha around the corner and let him out. Zawierucha was stopped by P/O Nicolette and a tied off plastic baggie of cocaine powder was recovered and placed on PR#2613309. (approx. 3.5 grams) The W/M was observed returning to 4808 returning to 4808 Comly by P/O Vega #2780 and again meeting with Doebley. The W/M was observed counting out and handing USC to Doebley. Doebley then entered 4808 Comly and exited after a brief stay.

Various vehicles came and left 4808 Comly until 7:20pm when Doebley left inside of the blue white pick up YRF-2313 (registered to Steven Little [deleted]). Doebley was followed to the WAWA at Levick and Torresdale then followed to the rear of 2000 Rahn St and then lost in the area. Doebley was observed on State rd and followed onto 5000 Homestead St and observed entering 5038 Homestead St by P/O Beck #3533 at 9:15pm. At approx. 11:30pm Doebley was observed leaving 5000 Homestead St operating the blue/white pick up truck and was followed to 4808 Comly where P/O Beck observed Doebley close and lock the gate to the driveway. Doebley was then followed back to 5000 Homestead, parked and entered a house on that block. Doebley was then followed from 5000 Homestead to 4000 Higbee where he was observed by Sgt Shuck #8672 parking in the rear driveway near 4049 Higbee. Doebley then entered the rear yard of 4049 Higbee that contained a white pit bull. Doebley then opened the rear garage door of 4049 Higbee (attached) and entered this location at approx. 11:50pm. Surveillance of 4049 Higbee was terminated at 12:30am. P/O Ryan #6329 observed the blue/white pick up parked in the rear of 4049 Higbee at approx. 7:15am on 10-05005. 5038 Homestead listed owner is Ruth Nolan, 4049 Higbee is listed as a co-owner address and the water bill for 5038 Homestead is mailed to 4049 Higbee St.

On 10-05-08 a surveillance was established on 5000 Homestead St at 4:45pm by P/O Beck #3533. Michael Doebley [deleted] was observed exiting 5019 Homestead and entering a grey Jeep Grand Cherokee FMR-6175 (registered to Michael Doebley, 5019 Homestead) and driving to 4808 Comly. Michael DOebley entered 4808 Comly and exited along with Joseph DOebley. Both Michael and Joseph Doebley returned to and entered 5019 Homestead. Joseph Doebly then exited 5019 Homestead and entered 5022 Homestead. A Black Ford Expedition FDG-2986 parked on the Block and A W/M exited and entered 5022 Homestead. The W/M and Joseph Doebley exited and drove to 4808 Comly in the Expedition. Doebley then drives the white/blue pick up truck YRF-2313back over to 5000 Homestead St. Doebley then goes into 5019 Homestead, 5017 Homestead, Doebley used keys to enter 5022 Homestead. Doebley also used keys to enter 5028 Homestead. Doebley met with and entered 5030 Homestead along with a W/F and stayed inside that location for approx. and hour. Doebley then entered 5022 Homestead and stayed there until approx. 8:15pm. Real estate checks of 5017 Homestead show Jos Pete as the owner, Edward Stern as the owner for 5019 Homestead St, 5022 Homestead owned by Charles Painter, and 5028 Homestead owner by Patrick Fox with a co-owner address listed as 5019 Homestead. Michael Doebley has two prior PAID arrests, Edward Stern owner of 5019 Homestead has three prior PAID arrests. Your Affiant has conducted NAK test "G" on the purchased and recovered cocaine during this investigation and the results were positive for the present of cocaine base. Your Affiant is certified.

Your Affiant, Police Officer John Ryan # 6329, being duly sworn according to law deposes and says:

1. I am a duly sworn Philadelphia Police Officer, employed by the Philadelphia Police Department, presently assigned to the Narcotics Field Unit.  I have been a sworn law enforcement officer since October 1993.  I have been assigned to the Narcotics Bureau since December of 1997 and to the NFU since April of 1999.

2. In my capacity as a Police Officer, I have been involved in numerous arrests and investigations for violations of the PA Controlled Substance Act of 1972.  I have conducted numerous narcotics surveillance, and purchased narcotics during controlled purchases.  I am empowered to conduct investigations and to make arrests for these violations.

3. In addition to this experience in the investigation of illegal drug trafficking, I have received specialized narcotics investigation training in the manufacturing, packaging, distribution, and use of narcotics and narcotic paraphernalia; as well as, field-testing narcotics.

4. Your affiant is aware of the circumstances of this case and is personally involved in the investigation of the facts contained in this affidavit.  I allege the facts outlined in the preceding paragraphs show that there is probable cause to believe that 4049 Higbee St, 4808 Comly St, 5017 Homestead, 5019 Homestead ST, 5022 Homestead St, and 5038 Homestead St all in the city and county of Philadelphia is being used store cocaine powder for street sales from phone number 215-397-7695 and from 4808 Comly St, your Affiant respectfully requests that a search warrant be granted due to the circumstances enumerated above.